## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE COLONIAL BANCGROUP, INC., and KEVIN O'HALLORAN,<br><br>    **Plaintiff,**<br><br>**v.**<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>    **Defendants.**<br>_____<br><br>FEDERAL DEPOSIT INSURANCE CORPORATON AS RECEIVER FOR COLONIAL BANK,<br><br>    **Plaintiff,**<br><br>**v.**<br><br>PRICEWATERHOUSECOOPERS LLP and CROWE HORWATH LLP,<br><br>    **Defendants.** | **Case No. _____** |

## MOTION TO QUASH SUBPOENAS TO ARTHUR LINDO, DOREEN EBERLEY AND JUDITH DUPRE OR, IN THE ALTERNATIVE, FOR A <u>PROTECTIVE ORDER</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ............................................................................................. 3

SUMMARY OF ARGUMENT ............................................................................ 4

ARGUMENT AND AUTHORITIES ..................................................................... 6

    I.     THE TESTIMONY CROWE SEEKS IS IRRELEVANT. ................................... 6

         A.    The testimony Crowe seeks is irrelevant because the Interagency
             Statement does not set the standard of care. ............................................. 7

         B.    The testimony Crowe seeks is irrelevant because the examiners do
             not owe a duty to Crowe. ........................................................................... 8

    II.    CROWE SEEKS TESTIMONY THAT IS BARRED BY RULE 45. .................. 10

         A.    Testimony regarding the adoption of the Interagency Statement is
             protected by the Deliberative Process privilege ....................................... 10

         B.    Testimony regarding the interpretation of the Interagency
             Statement is impermissible expert testimony. ......................................... 11

    III.    CROWE CANNOT DEMONSTRATE THE EXCEPTIONAL NEED THAT
           WOULD JUSTIFY DEPOSING THE SENIOR REGULATORS ...................... 13

         A.    Federal courts protect high-level government officials from having
             to testify about their official decisions. .................................................... 13

         B.    Eberley and Lindo are high-level government officials. ......................... 16

         C.    No exceptional circumstances exist that warrant the depositions ............ 18

    IV.    CROWE FAILED TO FOLLOW MANDATORY ADMINISTRATIVE
           PROCEDURES WHEN SEEKING THIRD-PARTY DISCOVERY ................. 20

         A.    Prior written permission of the Agencies is required before the
             depositions can commence. ...................................................................... 20

          B.    Crowe failed to seek written permission from the Agencies. ................... 23

    V.    CONCLUSION ............................................................................................ 244

CERTIFICATE OF SERVICE ............................................................................. 277

## PRELIMINARY STATEMENT

The Board of Governors of the Federal Reserve System (the "Board") and the Federal Deposit Insurance Corporation ("FDIC") hereby seek protection from third party subpoenas served in connection with litigation pending in the Middle District of Alabama, *The Colonial BancGroup, Inc., et al. v. PricewaterhouseCoopers LLP & Crowe Horwath LLP,* Civ. No. 2:11-cv-00746-WKW (M.D. Ala.) (the "Alabama Action"). The Alabama Action involves claims asserted by the FDIC as Receiver ("FDIC-R") for a failed bank, Colonial Bank, Montgomery, AL ("Bank" or "Colonial"), against Crowe Horwath LLP ("Crowe"), the bank's former internal auditor, and PricewatershouseCoopers LLP ("PwC"), the Bank's former outside auditor.

On February 4, 2015, Defendant Crowe served its *Notices of Subpoena* seeking to depose three senior banking regulators: Arthur Lindo (Senior Associate Director for Policy, Division of Banking Supervision & Regulation of the Board), Doreen Eberley (the Director of the Division of Risk Management Supervision of the FDIC responsible for supervising insured depository institutions)[1], and Jennifer

---

[1] In supervising banks and resolving failed banks, the FDIC operates in two separate capacities. *See Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705, 708-09 (9th Cir. 1995) ("Because FDIC Corporate and FDIC Receiver perform two different functions and protect wholly different interests, courts have been careful to keep the rights and liabilities of these two entities legally separate."); *Dubois v. Washington Mutual Bank*, No. 09-2176, 2010 WL 3463368, *6 (D.D.C. Sept. 3, 2010) ("FDIC-Corporate is a separate legal entity from FDIC-Receiver. . . . ); *Dababneh v. F.D.I.C.*, 971 F.2d 428, 434 (10th Cir. 1992)("FDIC–C is a separate entity from FDIC–R…"); *citing Urbanizadora Villalba, Inc. v. Banco y Agencia de Financiamiento de La Vivienda de*

Kelly (Senior Deputy Comptroller and Chief National Bank Examiner at the Office of the Comptroller of the Currency ("OCC")). [2] Collectively, Mr. Lindo and Ms. Eberley are referred to as the "Senior Regulators." In addition to the Senior Regulators, Crowe also issued a subpoena to Judith E. Dupre ("Ms. Dupre") (collectively with the Senior Regulators "the Witnesses"). Ms. Dupre is an employee of the FDIC and is currently the Executive Secretary of the Federal Financial Institutions Examination Council ("FFIEC"). The Board and FDIC jointly file this motion to quash or, in the alternative, for a protective order on the Witnesses' behalf. The subpoenas are attached hereto collectively as Exhibit 1 (the "Deposition Subpoenas").

The parties began discussions regarding the subpoenas on February 11, 2015. Pursuant to Local Civil Rule 7(m), the parties held a telephonic meet and confer session regarding the subpoenas on February 12, 2015. Despite the parties' best efforts, they were unable resolve their differences regarding the subpoenas, necessitating the filing of this Motion.

---

*Puerto Rico,* 845 F.2d 1 (1st Cir.1988) (explaining the separate roles of, and remedies available from, FDIC–C and FDIC–R, respectively). FDIC-Receiver accepts appointment as receiver for failed banks and liquidates their assets and liabilities. 12 U.S.C. §§ 1821(c)(d). In its corporate capacity, FDIC-Corporate insures bank deposits, examines banks, supervises their operation and issues regulations. 12 U.S.C. §§ 1811, 1818, 1821(f). This motion is submitted on behalf of FDIC-Corporate as one of the proposed deponents, Ms. Eberley, is the Director of the FDIC Division charged with supervising and regulating over 4,500 open financial institutions.

[2] The OCC filed a motion to quash the subpoena *ad testificadum* to Ms. Kelley, as well as a subpoena duces tecum issued to the OCC, on February 13, 2015. That motion to quash is pending in Miscellaneous Action No. 1:15-mc-00201.

# BACKGROUND[3]

Over a number of years, Lee Farkas, the CEO of Taylor, Bean, and Whitaker Mortgage Corp. ("TBW"), sold thousands of fictitious and other "junk" mortgage loans to Colonial Bank in a scheme to defraud the bank of more than a billion dollars. When this fraud was detected in 2009, Colonial Bank failed and was closed by the Alabama State Banking Department, which appointed FDIC-R as the bank's receiver. FDIC-R subsequently brought suit against PwC and Crowe – respectively, Colonial Bank's external and internal auditors – alleging causes of action arising out of their failure to detect the Farkas fraud. Kevin O'Halloran, the trustee for Colonial BancGroup, Inc. (the holding company that owned Colonial Bank) also brought a lawsuit against the same defendants as trustee of the bankrupt holding company. These actions were consolidated, and are now proceeding in the Middle District of Alabama District Court before Chief Judge Watkins.

On February 4, 2015, Crowe served notice of the deposition subpoenas to the Witnesses, seeking depositions that are scheduled to begin on February 20, 2015.  The subpoenas were served on the witnesses at various times thereafter.  At a February 12th "meet and confer," counsel for Crowe stated that Crowe seeks testimony regarding a 2003 "Interagency Policy Statement on the Internal Audit Function and its Outsourcing" (the "Interagency Statement"), which is attached as

---

[3] The information contained in the Background section derives from the pleadings on file in the Alabama Action.

Exhibit 2.[4]   More specifically, Crowe stated that it intends to question the Witnesses regarding the "adoption, interpretation, and implementation" of the Interagency Statement.  As demonstrated more fully below, these topics are neither proper nor allowable areas of inquiry, and even if they are appropriate areas of inquiry, these are not the appropriate witnesses to testify to them.

## SUMMARY OF ARGUMENT

The Court should quash the subpoenas and issue a protective order precluding Crowe from deposing the Witnesses for the following reasons:

*First*, Crowe is unable to demonstrate that testimony from any government official regarding the "adoption, interpretation, and implementation" of the Interagency Statement is at all relevant to the Alabama Action.  How government regulators interpret regulatory guidance has no bearing on whether Crowe breached its duty of care in connection with the services it provided to Colonial.

*Second*, Crowe is not entitled to depose any government witness regarding the "adoption, interpretation and implementation" of the Interagency Statement because such testimony is either privileged or expert opinion and neither may be solicited by subpoena to a non-party.  Federal Rule of Civil Procedure 45 *requires* that a subpoena be quashed when it "requires disclosure of privileged or other

---

[4]   A copy of this document is publicly available at https://www.fdic.gov/regulations/laws/rules/5000-3250.html.  The Interagency Statement was originally adopted in 1997 and was revised in 2003.

protected matter, if no exception or waiver applies" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv). Similarly, when a witness is subpoenaed to testify as an un-retained expert and to provide an "opinion or information that does not describe specific occurrences in dispute ..." the Court may quash the subpoenas.  Fed. R. Civ. P. 45(d)(3)(B)(ii).

*Third*, as to the Senior Regulators, Crowe cannot demonstrate the extraordinary circumstances necessary to compel the testimony of high-level government officials who "should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Secretary of Labor,* 766 F.2d 575, 586 (D.C.Cir.1985) (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)).   As shown below, no "extraordinary circumstances" exist here because Crowe cannot establish that the information sought from the Witnesses  is both essential to  its case and is not obtainable from another source.

*Fourth*, with regards to the notice deposition of Ms. Dupre, FFIEC is a formal interagency body composed of representatives of the FDIC, OCC, the Board, the Consumer Financial Protection Bureau, the National Credit Union Administration, and a representative of the state banking regulatory agencies.[5]

---

[5] The composition of the FFIEC has changed since it was created in 1979 by the Federal Financial Institution Regulation and Interest Rate Control Act of 1978.  *See* Title X, Pub. L. 95-630 (1978).

Declaration of Judith Dupre ("Dupre Decl."), attached hereto as Exhibit 6. While FFIEC provides a forum to promote uniformity in banking regulation, it plays no role in the implementation or interpretation of regulations or guidance, which is left to the constituent agencies. *Id.* at ¶¶ 2 and 4. Moreover Ms. Dupre did *not* serve as the Executive Secretary of FFIEC when the Interagency Guidance was issued. *Id.* at ¶ 5. Thus, Ms. Dupre cannot testify to the topics Crowe has identified as the subject of her deposition.

*Finally*, the Supreme Court has established that discovery from a non-party federal agency is subject to the regulations promulgated by that agency. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). As Crowe has made no attempt to exhaust the administrative process set forth in the regulations promulgated by the FDIC, the Board, or the FFIEC, Crowe is not entitled to subpoena the Senior Regulators or Ms. Dupre.

## ARGUMENT AND AUTHORITIES

### I.      THE TESTIMONY CROWE SEEKS IS IRRELEVANT.

Testimony by federal regulators regarding the adoption, interpretation, and implementation of a policy statement which describes some characteristics of the internal audit function at a federally-regulated bank is irrelevant to the Alabama Action. While Colonial Bank's internal audits will certainly be an issue in the

underlying litigation, the adoption, implementation, and interpretation by the regulatory agencies of their Interagency Statement will not.

### A. The testimony Crowe seeks is irrelevant because the Interagency Statement does not set the standard of care.

To the extent Crowe claims the Interagency Statement sets forth duties and standards of care relevant to Crowe, and that it trumps or modifies the legal standards owed by auditor-accountants to their client, Crowe is incorrect. The Interagency Statement is merely *guidance* that sets forth general guidelines and practices. It is not a regulation or legally controlling standard. *See, e.g. Center for Auto Safety v. NHTSA*, 452 F.3d 798, 808 (D.C. Cir. 2006) ("The guidelines are nothing more than general policy statements with no legal force. They do not determine any rights or obligations, nor do they have any legal consequences.") And to argue otherwise would contradict the Supreme Court's holding in *FDIC v. O'Melveny & Myers,* which held that state law governs claims and defenses based upon conduct of private parties in tort actions brought by the FDIC-R like the claims asserted in the Alabama Action against Crowe based on its negligence in performing services for Colonial. 512 U.S. 79 (1994).

Faithful to the teaching in *O'Melveny*, the court in the Alabama Action has found – citing Alabama law – that Crowe and PwC owe to their clients a "duty to exercise reasonable professional care." *Colonial BancGroup, Inc. v. PricewaterhouseCoopers, LLP*, No. 2:11-CV-746-WKW, 2014 WL 4444148, at *3

(M.D. Ala. Sept. 9, 2014) (quoting *Blumberg v. Touche Ross & Co.*, 514 So.2d 922, 925 (Ala.1987). This is not modified by actions or guidance from the banking regulators and, in fact, under *O'Melveny* it cannot be.  Indeed, as recognized by the court in the Alabama Action, audit professionals owe a duty of care to the bank and that duty is determined by state law alone. *Colonial BancGroup, Inc. v. PricewaterhouseCoopers, LLP*, 2:11-CV-746-WKW, 2014 WL 4444148, at *3 (M.D. Ala. Sept. 9, 2014).

The question to be decided by the jury in Alabama is whether Crowe performed its internal audit functions at Colonial Bank with sufficient care as determined by the AICPA (American Institute of Certified Public Accountants) Code of Professional Conduct, the AICPA Consulting Standards, the Institute of Internal Auditors Standards for the Professional Practice of Internal Auditing, and state law. The process by which the Interagency Statement was adopted in 1997 and 2003, and its subsequent implementation and interpretation by the Agencies, are irrelevant to the question of Crowe's liability in the Alabama Action.

### B.     The testimony Crowe seeks is irrelevant because the examiners do not owe a duty to Crowe.

To the extent Crowe intends to question the Witnesses to support a defense based on regulatory negligence that absolves Crowe of liability, well-established law makes clear that a defendant who is sued by the FDIC-R cannot raise an affirmative defense based on the pre-receivership conduct of a banking regulator.

*See, e.g., Grant Thornton, LLP v. FDIC*, 535 F. Supp. 2d 676, 722 (S.D. W.Va. 2007) *rev'd on other grounds sub nom. Ellis v. Grant Thornton LLP*, 530 F.3d 280 (4th Cir. 2008) (collecting cases and concluding that "[c]ourts have uniformly held that claims or defenses based upon pre-receivership actions of regulators are legally insufficient"); *see also State of N.D. v. Merchants Nat. Bank & Trust Co.*, *Fargo, N.D.*, 634 F.2d 368, 379 n.20 (8th Cir. 1980).

In *Grant Thornton*, an accounting malpractice case that is analogous to the Alabama Action, the court explained it did "not believe that anything the regulators did or failed to do in their regulatory capacity should operate to reduce or defeat the FDIC's claim against Grant Thornton in this case so long as the regulators did not actually interfere with Grant Thornton's undertakings." 535 F. Supp. 2d at 720-21.  There are no allegations here that the regulators interfered with Crowe's work.  Moreover, any testimony relating to regulators' actual findings regarding Colonial Bank and its holding company is privileged pursuant to the bank examination privilege.  *See, e.g.,  In re Subpoena Served Upon OCC*, 967 F.2d 630 (D.C. Cir. 1992).

Simply put, testimony from the Witnesses regarding the implementation and interpretation of the Interagency Statement will not reduce or defeat the FDIC-R's claims, and is therefore irrelevant.  The subpoenas should be quashed.

## II.    CROWE SEEKS TESTIMONY THAT IS BARRED BY RULE 45.

Any testimony regarding the Interagency Statement necessarily calls for testimony which is either privileged or un-retained expert opinions, neither of which is permissible under Federal Rule of Civil Procedure 45.

### A.    Testimony regarding the adoption of the Interagency Statement is protected by the Deliberative Process privilege.

Discovery regarding the process by which the Interagency Statement was adopted by the federal banking agencies is protected by the deliberative process privilege. The deliberative process privilege protects "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. . . ." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Documents and testimony are protected from disclosure when a request would expose "an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its functions." *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l Railroad Passenger Corp.*, 376 F.3d 1270, 1278 (11th Cir.2004). The underlying purpose of the deliberative process privilege is to ensure that agencies are not forced to operate in a fish bowl. *Dow Jones & Co., Inc. v. Dep't of Justice*, 917 F.2d 571, 573 (D.C.Cir.1990).

10

The key question in determining whether a document or testimony falls within the privilege is "[d]oes the information reflect the give-and-take of the consultive process?" *Florida House of Representatives v. United States Dep't of Commerce*, 961 F.2d 941, 948 (11th Cir.1992). Here, testimony regarding the process that numerous banking regulators undertook to draft the Interagency Statement certainly reflects the "the give-and-take of the consultive process" and is therefore privileged.

### B. Testimony regarding the interpretation of the Interagency Statement is impermissible expert testimony.

To the extent that Crowe seeks to question the Witnesses regarding the interpretation and/or implementation of the Interagency Statement, Crowe is seeking un-retained expert testimony which is explicitly forbidden under Rule 45(d)(3)(B)(ii). [6]  *See* Fed. R. Civ. P. 45(d)(3)(B)(ii) (a court may quash a deposition seeking expert testimony from an un-retained expert when the opinion does not relate to "specific occurrences in dispute and results from the expert's study that was not requested by the party.")

Crowe is not seeking to depose the Witnesses about their personal knowledge concerning Crowe's failed audit work because fact depositions in the

---

[6] In any event, to the extent Crowe seeks the Witnesses' own actions regarding interpretation of the Interagency Statement, it would be seeking information protected by the deliberative process privilege, as discussed above.  The Agencies act through formal interpretations or actions, not through the comments or statements of their staff.  Thus, any statements made or positions taken by these Witnesses would be pre-decisional and deliberative in nature.

Alabama Action cannot take place prior to April 1, 2015. *See* Scheduling Order in the Alabama Action, attached hereto as Exhibit 3. Crowe thus implicitly acknowledges that Lindo, Eberley, and Dupre are not being deposed as fact witnesses by noticing the depositions prior to April 1, 2015. Therefore, any testimony they would be offering would constitute their own expert opinions as banking regulators.[7] Moreover, because Crowe is not seeking to depose the Witnesses regarding their personal knowledge about Crowe's audit work, the expert testimony they would offer would not relate to "specific instances in dispute."   As a result, under Rule 45(d)(3)(B)(ii) the depositions should be quashed.   See also *Putman v. Lima Auto Mall, Inc.*, CIV 08-MC-86-MJR-CJP, 2009 WL 35275, at \*2 (S.D. Ill. Jan. 6, 2009)(quashing a subpoena of an unretained, non-party expert as "overreaching and abusing the subpoena power.")

---

[7] Expert testimony is defined as "scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue," and thus, help the specialized knowledge of banking regulators qualifies as expert testimony. Fed. R. Evid. 702(a). Knowledge regarding the implementation and interpretation of federal regulators guidance is undoubtedly expert testimony. *See Reece v. Astrazeneca Pharmaceuticals, LP*, 500 F.Supp.2d 736, 744 (S.D. Ohio 2007) (identifying and allowing expert testimony on "the regulations governing the approval, labeling, advertising and marketing of pharmaceutical and medical products; the processes by which the FDA determines the efficacy and safety of new drugs and new drug applications; the issues the FDA considers in the development of product labeling and marketing information; and a manufacturer's responsibility within this system"); *Lillebo v. Zimmer, Inc*., No. 03–2919 (JRT/FLN), 2005 WL 388598, at \*5 (D. Minn. Feb.16, 2005) (identifying and allowing expert testimony on the "general nature of the approval and regulatory process, and the FDA's general expectations with respect to testing and marketing of new products"); *American Home Assur. Co. v. Merck & Co., Inc*., 462 F.Supp.2d 435, 451 (S.D.N.Y.2006) (identifying and allowing expert testimony on proper interpretation of FDA regulations as they relate to licensing of vaccines because "testimony on these complex regulatory provisions will assist the trier of fact").

Finally, when a party such as Crowe seeks expert testimony from an un-retained expert, it must show "substantial need for the testimony or material that cannot be otherwise met without undue hardship." *Statutory Comm. of Unsecured Creditors v. Motorola, Inc.*, 218 F.R.D. 325, 327 (D.D.C. 2003).  In addition to the reasons cited throughout this brief, Crowe cannot establish undue hardship as it is free to retain its own experts who can opine on the Interagency Statement.  The relevance, validity and admissibility of any such proffered testimony can be adjudicated by the parties through the standard *Daubert* process, not through a plethora of third-party subpoenas to government officials.

### III.   CROWE CANNOT DEMONSTRATE THE EXCEPTIONAL NEED THAT WOULD JUSTIFY DEPOSING THE SENIOR REGULATORS.

#### A.   Federal courts protect high-level government officials from having to testify about their official decisions.

The Supreme Court and Federal appellate courts have uniformly held that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time*, 766 F.2d at 586; see also *United States v. Morgan*, 313 U.S. 409, 422 (1941) (stating that "the short of the business is that the Secretary should never have been subjected to this examination"). This is particularly true when the proposed deposition seeks testimony concerning the internal deliberations of high-level Government officials. Crowe is "clearly . . . not entitled" to depose the Senior

Regulators in order to probe how their agencies implemented and interpreted the Interagency Guidance. *See Warren Bank v. Camp*, 396 F.2d 52, 56 (6th Cir. 1968) (holding, based on *Morgan*, 313 U.S. at 421-22, that plaintiff was not entitled to depose the Comptroller of the Currency in an action challenging issuance of a national bank charter).

Both practical and constitutional considerations justify this general rule. First, the rule that high-level Government officials should not be compelled to testify about official decisions absent "extraordinary circumstances" is grounded in constitutional separation-of-powers principles. S*ee Vill. of Arlington Heights v. Metro. Hous. Dev*. Corp., 429 U.S. 252, 268 n.18 (1977) ("[J]udicial inquiries into legislative or executive motivation represent a substantial intrusion into the working of other branches of government. Placing a decision-maker on the stand is therefore 'usually to be avoided.'"). Indeed, "[j]ust as a judge cannot be subjected to such a scrutiny [*i.e.*, oral examination], so the integrity of the administrative process must be equally respected." *Morgan*, 313 U.S. at 422 (citation omitted).

Second, liberal access to high-level officials during pre-trial discovery could impose a chilling effect upon such officials, making them less willing to explore and discuss all available options, including controversial ones. *See Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 12 (D.D.C. 1993) ("[S]ubjecting officials to interrogation about how they reached particular decisions would impair

that decision-making process by making officials less willing to explore and discuss all available options, no matter how controversial."). Moreover, as a practical matter, high-level Government officials would be prevented from carrying out their essential duties if required to give testimony in the myriad civil actions involving their agencies. *See In re United States (Kessler),* 985 F.2d at 512 ("High ranking government officials have greater duties and time constraints than other witnesses."). As one district court explained:

> [P]ublic policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases. Considering the volume of litigation to which the government is a party, a failure to place reasonable limits upon private litigants' access to responsible government officials as sources of routine pre-trial discovery would result in a severe disruption of the government's primary function.

*Cmty. Fed. Sav. & Loan Ass'n v, FHLBB*, 96 F.R.D. 619, 621 (D.D.C. 1983).

The rule against requiring testimony of high-level government officials is not limited to agency heads. It has been applied, for example, to senior executive department officials, *Simplex,* 766 F.2d at 586 (upholding ALJ order prohibiting party from calling Department of Labor's Solicitor, Chief of Staff, Regional Administrator and Area Director to testify at a hearing); *Church of Scientology v. IRS*, 138 F.R.D. 9, 12 (D. Mass. 1990) (quashing deposition subpoena to IRS division director), and senior executive policymaking officials. *Alexander v. FBI*,

186 F.R.D. 1, 4 (D.D.C. 1998) (granting protective order vacating notices of deposition to four senior advisors to the President).   As the court held in *Alexander*, "[g]iven the nature of [these individuals] positions …, there is a substantial likelihood that depositions would significantly interfere with their ability to perform their governmental duties … [and they] do not possess information relevant to the underlying claims." *Id.*

### B.   The Senior Regulators are high-level government officials.

Here, there can be no doubt that both Senior Regulators qualify as senior government officials. Doreen R. Eberley is the Director of the FDIC's Division of Risk Management Supervision (RMS). Declaration of Andrew J. Dober ("Dober Decl.") at ¶ 5, attached hereto as Exhibit 4.  As such, she is responsible for the FDIC's programs designed to promote financial institutions' safety and soundness and those institutions' adherence to FDIC statutes and regulations. *Id.*  She is responsible for the supervision of over 4,500 banks and reports directly to the Chairman of the FDIC. *Id.*   Additionally, she is ultimately responsible for domestic and international banking policy development, supervisory enforcement initiatives, and regulatory approvals that allow banks to engage in certain activities or transactions carried out through the Division's workforce of approximately 2,800 employees deployed in six regional offices and 86 field offices nationwide. *Id.*   Ms. Eberley also directs the FDIC division with principal

responsibility for monitoring FDIC-insured "Problem" institutions, of which there are currently 329 with total assets of approximately $102.3 billion and is involved in several other important FDIC initiatives relating to Dodd-Frank Act implementation, monitoring of systemically important financial institutions and cyber-security issues.  *Id.* at ¶ 6.[8]

Arthur W. Lindo is the Senior Associate Director for Policy in the Board's Division of Banking Supervision & Regulation ("BS&R").  Declaration of Yvonne F. Mizusawa ("Mizusawa Decl."), at ¶ 4, attached hereto as Exhibit 5.  BS&R is responsible for developing and implementing rules, policies and guidance for Board-supervised financial institutions nationwide, which currently include approximately 4,500 bank holding companies, 350 savings and loan holding companies, 850 state member banks, 160 foreign banking organizations operating in the U.S. and 3 non-bank financial companies designated by the Financial Stability Oversight Council.  *Id.*  BS&R coordinates and oversees the execution of the Board's supervisory responsibilities by the Federal Reserve Banks, and contributes to the execution of the Board's financial stability and central bank responsibilities.  *Id.*  As Senior Associate Director, Mr. Lindo supervises BS&R's Accounting Policy, Capital & Regulatory Policy, Insurance Policy, Policy

---

[8] Ms. Eberley's personal biography is available online at:
http://www.aba.com/Tools/BankType/Mutual/Documents/MutualSpeakerBios.pdf (pg. 1). The notice of her appointment to Director of the FDIC's RMS is available at:
https://www.fdic.gov/news/news/press/2007/pr07004.html

Implementation & Effectiveness, Quantitative Risk, Regulatory Reporting, Risk Policy and Systems and Operational Resiliency Policy Sections, a staff of approximately 90 full and part time Board officers and employees. *Id.*   Mr. Lindo's responsibilities also include the supervision and evaluation of the financial condition and soundness of the largest, most complex financial institutions in the U.S. as a member of the operating committee of the Board's Large Institution Supervision Coordinating Committee (LISCC) and he also participates in a number of interagency banking policy task forces and committees, including the FFIEC's Task Force on Supervision and the FFIEC's Appraisal Subcommittee, which coordinate and oversee matters relating to safety and soundness supervision and examination of depository institutions. *Id.*

As to Ms. Dupre, her deposition is a fruitless endeavor. Ms. Dupre had no involvement in drafting, adopting, implementing, interpreting or applying the Interagency Statement and she has no knowledge about the facts of this case. *See* Dupre Decl. at ¶ 5.  Indeed, the constituent agencies—not FFIEC—are responsible for adopting, interpreting and implementing regulatory guidance. *Id.* at ¶ 4.

### C.    No exceptional circumstances exist that warrant the depositions.

In order to demonstrate that "exceptional circumstances" exist, Crowe must "establish at a minimum that [the Senior Regulators] possess information essential to [its] case which is not obtainable from another source." *See In re United States*

18

*(Holder)*, 197 F.3d at 314. Crowe cannot make that showing because the information it seeks is not essential, or even relevant, to its case, as shown above.

Crowe seeks discovery related to the drafting, interpretation, and application of the Interagency Statement, information which is hardly "essential" to the suit. None of this testimony sought by Crowe has any bearing on whether Crowe's audit work conformed to the applicable standard of care. Indeed, as noted above, the issue to be decided by the jury in Alabama is whether Crowe performed its internal audit functions at Colonial Bank with sufficient care as determined by the AICPA Code of Professional Conduct, the AICPA Consulting Standards, the Institute of Internal Auditors Standards for the Professional Practice of Internal Auditing, and state law. The process by which the Senior Regulators participated in the drafting of the Interagency Statement, if they did so at all, is irrelevant to the issue of whether Crowe conformed its audit work to the applicable standards.

Moreover, Crowe has failed to show that the information sought is not obtainable from another source.  Indeed, the Interagency Statement is a publicly available document and it speaks for itself. If Crowe wants an expert witness to opine on the adoption, implementation, and interpretation of the Interagency Statement, then it can retain one itself.

Thus, this Court should issue a protective order barring Crowe from deposing the Senior Regulators because they are among the top government

officials within the system that regulates United States banks and financial institutions. Moreover, Crowe fails to show and cannot show the exceptional need as is necessary for it to be able to depose the Senior Regulators.

## IV. CROWE FAILED TO FOLLOW MANDATORY ADMINISTRATIVE PROCEDURES WHEN SEEKING THIRD-PARTY DISCOVERY.

Finally, the Court should quash the Deposition Subpoenas or, in the alternative, grant a protective order, because Crowe has failed to follow the procedures required by the Agencies' regulations for obtaining access to privileged and confidential information, or confidential supervisory information, including the deposition testimony of Agency officers or employees.

### A. Prior written permission of the Agencies is required before the depositions can commence.

Under each agency's regulations, their officers may not testify about privileged and confidential information, such as the deliberations leading up to its adoption of the Interagency Statement, or confidential supervisory information, such as the regulatory supervision of Colonial Bank, without the prior written permission of the respective agency. [9]

---

[9] *See* 12 C.F.R. § 261.20(g) ("[a]ll confidential supervisory information or other information made available under this section shall remain the property of the Board … [and may not be disclosed] without the prior written permission of the Board's General Counsel); 12 C.F.R. § 261.23(b) ("[u]nless the Board has authorized disclosure of the information requested, any person who has Board information that may not be disclosed, and who is required to respond to a subpoena or other legal process, shall attend at the time and place required and decline to disclose or to give any testimony … basing such refusal on the provisions of this regulation"); 12

In order to obtain testimony from an employee of the Board,[10] the FDIC,[11] or

the FFIEC,[12] a litigant must receive written permission from the respective agency.

Regulations such as these have been upheld by the D.C. Circuit, which has found

that reports and records gathered or created by a federal bank regulatory agency in

the course of performing its regulatory duties "are deemed the records of the

agenc[y]" and are available "only with the permission of the agenc[y]."  *Schreiber*

*v. Society for Sav. Bancorp*, 11 F.3d 217, 222 (D.C. Cir. 1993).  Likewise, the U.S.

Supreme Court has upheld the use of administrative agency regulations to prevent

agency employees from testifying regarding confidential agency information as

---

C.F.R § 309.7 (Absent "written authorization of the [FDIC's] General Counsel", an FDIC employee served with a subpoena must "respectfully decline to produce any such record or give any testimony."); 12 C.F.R. § 1101.5 ("No person shall testify, in court or otherwise, as a result of activities on behalf of the [Federal Financial Institutions Examination Council] without prior written authorization from the Council.")

[10] In order to obtain testimony from the Board's employees regarding confidential supervisory information, a litigant must file a written request with the Board's general counsel describing the information sought, the relationship of the information to the issues in the litigation, the requester's need for the information, the reason equivalent information cannot be obtained from another source, and committing to obtain and appropriate protective order.  *See* 12 C.F.R. § 261.22(b).  Similar procedures may be used to request access to privileged and confidential information of the Board.  12 C.F.R. §§ 261.20(g) and .23(a) and (b).

[11] In order to obtain testimony from an employee of the FDIC, a litigant "shall submit a request for discretionary disclosure directly to the [FDIC's] General Counsel. Such request shall specify the information sought with reasonable particularity and shall be accompanied by a statement with supporting documentation showing in detail the relevance of such exempt information to the litigation, justifying good cause for disclosure, and a commitment to be bound by a protective order." 12 C.F.R. § 309.6.

[12] In order to obtain testimony from an employee of the FFIEC, a litigant (or the litigant's attorney) must submit "an affidavit to the Council setting forth the interest of the litigant and the testimony or documents desired." 12 C.F.R. § 1101.5.

third parties in lawsuits.  In *U.S. ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951), the Court held that an FBI agent could not be held in contempt for complying with the Attorney General's order, pursuant to Department of Justice regulations, that he refuse to comply with a document subpoena.  The Court held "[w]hen one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determinations as to whether subpoenas duces tecum will be willingly obeyed or challenged is obvious."  *Id.* at 468.

In the wake of *Touhy*, numerous federal courts have quashed deposition subpoenas to agency employees where the parties failed to comply with agency regulations requiring litigants to request and obtain administrative approval for such testimony.[13]  As the court noted in *Golden Pacific Bancorp.,* requiring exhaustion has "the salutary effects of allowing OCC to take a position on the …

---

[13] *In re Recalcitrant Witness Boeh*, 25 F.3d 761, 763 (9th Cir. 1992) (reversing district court order denying government motion to quash subpoena for testimony of FBI agent where the agent "may not be held in contempt for failing to comply with a court order if a valid agency regulation required him not to comply"); *Moore v. Armour Pharmaceutical Co.,* 927 F.2d 1194, 1198 (11th Cir. 1991) (district court did not abuse its discretion in quashing deposition subpoena to government AIDS researcher where "the plaintiffs' subpoena was so broad, no policy considerations could justify overriding HHS's denial"); *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989) ("an unbroken line of authority … directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations"); *Golden Pacific Bancorp v. FDIC,* 1999 U.S. Dist. LEXIS 20303 at *10, Civ. No. 99-3799 (JCL) (D.N.J., Nov. 9, 1999) (quashing deposition subpoena where "the OCC's *Touhy* regulations and the exhaustion doctrine require Bancorp to submit an administrative request to OCC before deposing" a former OCC bank examiner).

deposition and the information sought before the judicial process is invoked …
[and] would develop a record for judicial review in the event that OCC refuses the
request."  1999 U.S. Dist. LEXIS 20303 at *10-11.

### B. Crowe failed to seek written permission from the Agencies.

Here, the Deposition Subpoenas should be quashed because Crowe has
failed to follow the agencies' administrative procedures for requesting access to the
testimony of the Senior Regulators and Ms. Dupre.  Indeed, Crowe was informed
of the substance of the Board's regulations -- *see* Mizusawa Decl., ¶ 5 and Exhibit
B to the Mizusawa Decl. -- but did not submit an administrative request for Mr.
Lindo's testimony.   The FDIC also has no record of receiving a *Touhy* request for
Ms. Eberley.   Dober Decl. at ¶ 7.  Likewise, Ms. Dupre has no record of receiving
an administrative request regarding the subject deposition.  Dupre Decl. at ¶ 7.
Because Crowe has failed to comply with the Agencies' administrative procedures
for requesting access to deposition testimony, the Deposition Subpoenas should be
quashed and a protective order granted on that basis alone.

 Moreover, requiring Crowe to submit an administrative request will permit
the agencies to weigh Crowe's stated need for the testimony against the agencies'
need to maintain confidentiality, decide whether to waive applicable privileges for
some or all of the requested testimony, the potentially deleterious effect of these
and other requests for testimony on the officers' ability to perform their

governmental duties, the availability to Crowe of similar information from other sources, including documents or the testimony of less senior government officials or private sector deponents or experts, whether an appropriate protective order is in place to protect confidentiality of the testimony, and similar factors. *See* 12 C.F.R. § 261.22(b) (Board); 12 C.F.R. § 309.6 (FDIC-C); 12 C.F.R. § 1101.4-1101.5 (FFIEC). If such requests are filed and granted, no further action would be required by the Court. If the requests are denied in whole or in part, the Court could, upon motion by defendants, determine whether the agencies acted lawfully in denying testimony. At this juncture, because Crowe has failed to exhaust its administrative remedies, the Deposition Subpoenas are premature and should be quashed.

## V.    CONCLUSION

For the reasons stated above, the Senior Regulators and Ms. Dupre respectfully request that this Court quash the Deposition Subpoenas and issue a protective order releasing the Senior Regulators and Ms. Dupre from any obligation to appear and be questioned by Crowe.

Respectfully submitted,

_____

Barbara Katron
Senior Counsel
Andrew J. Dober, (dc bar no. 489638)
Counsel, Corporate Litigation Unit
**Federal Deposit Insurance Corporation**
3501 Fairfax Drive
Arlington, Virginia 22226
**bkatron@fdic.gov**
**adober@fdic.gov**
**703-562-2545**

David Mullin (TX Bar No. 14651600)
John G. Turner, III (TX Bar No. 20320550)
*Pro hac vice* pending

**MULLIN HOARD & BROWN, LLP**
500 South Taylor, Suite 800
Amarillo, Texas  79101
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086
Email:        dmullin@mhba.com
                  jturner@mhba.com

**ATTORNEYS FOR FEDERAL DEPOSIT
INSURANCE CORPORATION, IN ITS
CORPORATE CAPACITY**

_____

Katherine H. Wheatley
Associate General Counsel
Yvonne F. Mizusawa (D.C. Bar 416459)
Senior Counsel
Board of Governors of the Federal
Reserve System
20th & C Streets N.W.
Washington, D.C. 20551
(PH) (202) 452-3436

25

(FAX) (202) 736-5615
Email: Yvonne.f.mizusawa@frb.gov

**ATTORNEYS FOR THE BOARD OF
GOVERNORS OF THE FEDERAL RESERVE
SYSTEM**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 18, 2015, the foregoing document was filed with the Clerk of the Court for the United States District Court for the District of Columbia by hand delivery. I also certify that the foregoing document is being served via overnight delivery upon the following:

Stanley J. Parzen, Esq.
Justin A. McCarty, Esq.
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7326
Email: sparzen@mayerbrown.com
Email: jmccarty@mayerbrown.com



_____
                Andrew J. Dober

27