UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE COLONIAL BANCGROUP, INC., As post-confirmation debtor, and KEVIN O'HALLORAN, as plan trustee acting for and on behalf of the debtor,

Plaintiffs,

v.

PRICEWATERHOUSECOOPERS LLP, A United States limited liability partnership; CROWE HORWATH LLP, a United States limited liability partnership

Defendants.

Civil Action No. 15-mc-201 (GK)
Civil Action No. 15-mc-213 (GK)

FEDERAL DEPOSIT INSURANCE CORPORATION as receiver for COLONIAL BANK

Plaintiff

v.

PRICEWATERHOUSECOOPERS, LLP and CROWE HORWATH, LLP,

Defendants.

**MEMORANDUM OPINION**

The Board of Governors of the Federal Reserve System ("Board"), the Federal Deposit Insurance Corporation ("FDIC"), and the Office of the Comptroller of the Currency ("OCC") have asked this Court to quash third party subpoenas served in connection

with litigation pending in the Middle District of Alabama[1] (the "Alabama Actions").

On February 13, 2015, the OCC filed a Motion to Quash ("OCC Motion") [15-mc-201, Dkt. No. 1] with this Court, and on February 19, 2015, the FDIC and Board filed a related Motion to Quash ("FDIC Motion") [15-mc-213, Dkt. No. 1]. On March 9, 2015, PricewaterhouseCoopers LLP ("PwC") filed its Opposition ("PwC Opp'n") [15-mc-201, Dkt. No. 11] to the OCC Motion. On March 10, 2015, Crowe Horwath LLP ("Crowe") filed its Opposition ("Crowe Opp'n") [15-201, Dkt. No. 14; 15-mc-213, Dkt. No. 6] to both the OCC and FDIC Motions. On March 26, 2015, the OCC filed its Reply ("OCC Reply") [15-mc-201, Dkt. No. 16] and the FDIC and Board filed their Reply ("FDIC Reply") [15-mc-213, Dkt. No. 9]. Crowe also filed a Sur-Reply ("Crowe Sur-Reply") [15-mc-201, Dkt. No. 22] on May 27, 2015.

Upon consideration of the Motions, Oppositions, Reply, Sur-Reply, the entire record herein, and for the reasons stated below, the OCC's Motion to Quash is **granted in part and denied in part**, and the FDIC's Motion to Quash is **granted**.

---

[1] The cases, which have been consolidated, are Colonial BancGroup, Inc., et al. v. PricewaterhouseCoopers LLP & Crowe Horwath LLP, Civ. No. 2:11-cv-00746-WKW (M.D. Ala.) and Federal Deposit Insurance Corporation v. PricewaterhouseCoopers LLP & Crowe Horwath LLP, Civ. No. 2:12-cv-00957-WKW (M.D. Ala.).

## I. BACKGROUND

The Alabama Actions involve claims stemming from the 2009 failure of Colonial Bank, Montgomery, AL ("Colonial" or "Bank"), asserted by the FDIC as Receiver ("FDIC-R") against Crowe, Colonial's former internal auditor, and PwC, Colonial's former outside auditor (collectively, "Defendants"). OCC Mot. at 2. Colonial's failure was caused in part by a multi-year fraud in its Mortgage Warehouse Lending Division ("MWLD"). The FDIC-R alleges, inter alia, that the Defendants breached their professional duties by failing to discover the fraud. Id. The Board, FDIC, and OCC are not parties to the Alabama Actions.

On November 26, 2014, Defendants served a subpoena duces tecum on the OCC (the "Document Subpoena")[2]. See OCC Mot., Exhibit D. The Document Subpoena contains thirteen requests, which can be summarized as follows:

- Request 1 relates to OCC's supervision of Colonial;
- Request 2 relates to Colonial's internal audit function;
- Request 3 relates to internal audit work performed by Crowe;
- Request 4 relates to external audit work performed by PwC;
- Request 5 relates to Colonial's charter change;

[2] Subpoenas duces tecum were also served on the Board and FDIC, but the Board and FDIC have not moved to quash them, and they are not at issue here. Crowe Opp'n at 5.

- Request 6 relates to Taylor Bean & Whitaker Mortgage Corp. ("TBW") and Ocala Funding LLC;

- Request 7 is for identification of OCC employees who examined Colonial;

- Request 8 relates to Colonial's activity after OCC's supervision ended;

- Request 9 relates to documents the OCC produced or received in litigation in connection with Colonial or TBW;

- Requests 10-12 are for internal and draft documents relating to the Interagency Policy Statement on the Internal Audit Function and Its Outsourcing, dated March 17, 2003 (the "Interagency Policy Statement"); and

- Request 13 relates to the FDIC Office of Inspector General's Material Loss Review ("MLR") of Colonial.

In addition to the Document Subpoena, on February 4, 2015, Defendant Crowe served subpoenas ad testificandum on four banking regulators (the "Deposition Subpoenas"): Arthur Lindo (Senior Associate Director for Policy, Division of Banking Supervision & Regulation, Board), Doreen Eberley (Director, Division of Risk Management Supervision, FDIC), Jennifer Kelly (Senior Deputy Comptroller and Chief National Bank Examiner, OCC), and Judith Dupre (FDIC employee and Executive Secretary of the Federal

Financial Institutions Examination Council). OCC Mot., Ex. E; FDIC Mot., Ex. 1.

The OCC has only moved to quash Requests 1-7 and 10-12, and therefore Requests 8-9 and 13 are not at issue here. See OCC Mot. at 5, n. 1. After the Motions to Quash were filed, Defendants narrowed their Interagency Policy Statement requests to exclude all documents pre-dating the promulgation of the Interagency Policy Statement. Crowe Opp'n at 4-5, 24. In addition, Crowe is no longer pursuing Ms. Dupre's deposition in light of her declaration that she does not know any relevant facts. Crowe Opp'n at 31.

## II. Analysis

"The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances. A court should be loath to quash a subpoena if other protection of less absolute character is possible. Consequently, the movant's burden is greater for a motion to quash than if she were seeking more limited protection." U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp., 301 F.R.D. 20, 25 (D.D.C. 2014) (internal citation omitted). The OCC, FDIC, and Board have the burden of demonstrating that they are entitled to this extraordinary relief. Id.

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [or which] appears reasonably calculated to lead to the discovery of

admissible evidence." Fed. R. Civ. P. 26(b)(1). "[T]he general policy favoring broad discovery is particularly applicable where . . . the court making the relevance determination has jurisdiction only over the discovery dispute, and hence has less familiarity with the intricacies of the governing substantive law than does the court overseeing the underlying litigation." Jewish War Veterans of the United States of Am., Inc. v. Gates, 506 F. Supp. 2d 30, 42 (D.D.C. 2007).

**A.   The Document Subpoenas**

**1.   Requests 1-7**

The OCC argues that Requests 1-7 should be quashed because the documents sought are not relevant. See OCC Mot. at 11-18. The OCC states that Defendants seek the documents to "shield themselves from liability based on [] pre-receivership conduct of the OCC or another prudential regulator." OCC Mot. at 12. It is well-established that a defendant in an FDIC-R action cannot raise an affirmative defense based on the pre-receivership conduct of a banking regulator, and therefore, the OCC argues, Requests 1-7 are legally irrelevant. See id.; Grant Thornton, LLP v. FDIC, 535 F. Supp. 2d 676, 722 (S.D.W. Va. 2007), rev'd on other grounds sub nom. Ellis v. Grant Thornton LLP, 530 F.3d 280 (4th Cir. 2008) (collecting cases and concluding that "[c]ourts have uniformly held that claims or defenses based upon pre-receivership actions of regulators are legally insufficient")

Defendants respond that they are not seeking the documents to shield themselves from liability or to show that the OCC owed Colonial a duty. Rather, they are seeking the documents in order to respond to the Alabama plaintiffs' arguments that the fraud was easy to catch and that the accountants were negligent in not doing so. Crowe Opp'n at 8.

While the OCC has no responsibility for auditing banks, it has an enormous amount of responsibility for the supervision and monitoring of banks. PwC contends that the documents generated by and within the OCC are relevant because they "would reflect real-time observations, analyses, and assessments of bank management, the MWLD, risk factors, controls, audits, and other aspects of the bank that relate directly to the claims and defenses in the [Alabama Actions], or at least reasonably could lead to information bearing on the issues in the [Alabama Actions]." PwC Opp'n at 11.

Construing relevance liberally for purposes of discovery, Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, 103 F.3d 1007, 1012 (D.C. Cir. 1997), the Court concludes that Requests 1-7 are all relevant.

Relevance is not the end of the inquiry though. The "undue burden" standard of Federal Rule of Civil Procedure 45 "requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." Watts v. S.E.C., 482 F.3d 501, 509 (D.C. Cir. 2007). Federal Rule of Civil Procedure

26(b)(1)-(2) requires district courts to consider a number of factors pertaining to the question of undue burden, including: whether the discovery is "unreasonably cumulative or duplicative"; whether the discovery sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; and whether "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. Pro. 26; Watts, 482 F.3d at 509.

The OCC has offered to provide a breadth of documents to Defendants, and contends that these documents are "more than sufficient to meet the Defendants' needs" with regard to Requests 1-7. The OCC argues that any further production would be an undue burden. OCC Mot. at 18.

The OCC has offered to produce a copy of its "Transition Binder," which it compiled and provided to Colonial's new regulators "to give them an up-to-date and comprehensive understanding of the OCC's conclusions regarding [Colonial] from the time of the last completed OCC examination until the time of [Colonial] Bank's transition to the state charter." OCC Reply at 8, n. 8. The OCC has also offered to not object to the FDIC-R's production of all OCC supervisory correspondence that was in

Colonial's possession, as well as to supplement any advisory correspondence that is missing from Colonial's records. See id. The supervisory correspondence includes "the OCC's completed ROEs, Supervisory Letters, emails, and any other supervisory correspondence that the OCC routinely provided to Colonial during the time it was under the OCC's supervision." Id.

According to the OCC, these documents constitute "the entirety of the OCC's considered conclusions and assessments of Colonial covering the duration of the OCC's supervision of the institution." OCC Mot. at 20. Defendants argue that the remaining documents, such as work papers, records of meetings, and email exchanges are relevant. PwC Opp'n at 12.

The documents Defendants seek in addition to those already offered by the OCC are likely to be "unreasonably cumulative or duplicative," and, taking into account "the importance of the proposed discovery in resolving the issues," the burden and expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Pro. 26(b)(2)(C).

Therefore, the OCC's Motion to Quash the Document Subpoena with regard to Requests 1-7 is **granted** to the extent Defendants seek documents beyond those already offered by the OCC. The OCC shall provide the "Transition Binder" to Defendants and produce all correspondence with Colonial that occurred over the OCC's secure email server for the relevant time period, as defined in

the Document Subpoena.[3] In addition, the OCC shall not object to the FDIC-R's production of all OCC supervisory documents in Colonial's possession.

**2. Requests 10-12**

The OCC also argues that information relating to the Interagency Policy Statement (Requests 10-12)[4] is irrelevant. OCC Mot. at 16-18. Defendants counter that the Interagency Policy Statement and related documents are relevant to defining the scope and nature of Defendants' duty to Colonial. Crowe Opp'n at 15-17.

The Court agrees that while the Interagency Policy Statement is itself relevant, Defendants are seeking a broad range of documents related to it, many of which have little or no relevance to the Alabama Actions or Defendants' duty of care. Defendants clearly explain how the Interagency Policy Statement itself is relevant, but put forward very little explanation as to why the

---

[3] In its Sur-Reply, Crowe states that the OCC used a secure email program to correspond with Colonial during OCC's supervision of Colonial, and that these emails are either not available in the FDIC-R's production or are not easily accessible. See Crowe Sur-Reply at 2. Given the difficulties in identifying, accessing, and authenticating the emails sent over the OCC's secure server, the Court cannot feel confident that the documents produced by the FDIC-R constitute the "the entirety of the OCC's considered conclusions and assessments of Colonial," OCC Mot. at 20, unless the OCC produces the correspondence sent using the secure email program.

[4] As noted previously, Defendants narrowed their requests so they now seek only "post-decisional documents concerning the implementation and interpretation of the Interagency Policy Statement." Crowe Opp'n at 26.

related documents they seek are relevant. See Crowe Opp'n at 15-20.

The OCC's position is that all relevant documents regarding the Interagency Policy Statement are publicly available, including the Interagency Policy Statement itself, published guidance regarding internal and external audits, news releases, and the Comptroller's Handbook: Internal and External Audits. OCC Reply at 11. The OCC states that there is no non-public OCC guidance with respect to the Interagency Policy Statement, nor have there been any OCC amendments or modifications to the Interagency Policy Statement since its issuance. Id. at 11.

Given the attenuated relevance of any non-public Interagency Policy Statement documents, and the burden in producing them, OCC's Motion to Quash Requests 10-12 is **granted**.

**B. The Deposition Subpoenas**

In addition to documents, Defendant Crowe seeks the deposition testimony of three officials. It is undisputed that Crowe did not submit administrative requests to the Board, FDIC, or OCC prior to serving the Deposition Subpoenas, as required by the regulations of each respective agency. See United States ex rel. Touhy v. Ragen, 340 U.S. 462, 468 (1951) (discovery from a non-party federal agency is subject to the regulations promulgated by that agency); 12 C.F.R. § 4.31 et seq. (OCC regulations); 12 C.F.R. § 261.22(b) (Board regulations); 12 C.F.R. § 309.6 (FDIC

regulations). Crowe's explanation for this failure is that, because the agencies said they would never agree to any depositions concerning the Interagency Policy Statement, sending a formal letter "seemed an exercise in inevitable futility." Crowe Opp'n at 31.

The agencies' requirements to submit an administrative request for information prior to seeking relief from the court are clear. Counsel cannot independently decide that it need not comply with the regulations simply because it will be a losing proposition.

The Supreme Court has long recognized the general rule that a party must exhaust its administrative remedies before seeking relief from federal courts. See McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992). The exhaustion doctrine serves the interests of judicial economy, by offering an agency the opportunity to correct its own errors and to develop an administrative record, and separation of powers, by assuring that courts do not unduly intrude into the operations of executive branch administrative agencies. Id.

While Crowe suggests that a party's failure to comply with Touhy is not always fatal to a subpoena, it provides limited support for this proposition. See Crowe Opp'n at 31 (citing Forstmann Leff Assocs. v. American Brands, 1991 WL 168002, at *2 (S.D.N.Y. Aug. 16, 1991)); OCC Reply at 13. In any case, Crowe has

not presented exceptional circumstances that would warrant an exception to the requirement that it exhaust its administrative remedies.

In light of Crowe's failure to comply with the OCC, FDIC, and Board's administrative requirements, the OCC and FDIC's Motions to Quash are **granted** with regard to the three Deposition Subpoenas. Because the Motions are quashed on other grounds, the Court need not determine whether the proposed deponents are protected under the high government official doctrine at this time.

**III. Conclusion**

For the foregoing reasons, Defendant's Motion to Quash shall be **granted in part and denied in part**. An Order shall accompany this Memorandum Opinion.

June 8, 2015

Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF